**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

Nos. 26-1114, 26-1768, 26-1769, 26-1864

SPECIALTYCARE, INC., *et al.*,
*Appellants*,

v.

CIGNA HEALTHCARE, INC.,
*Appellee*.

On Appeal from the United States District Court
for the District of Delaware
No. 1:24-cv-01378

# BRIEF FOR APPELLEE CIGNA HEALTHCARE, INC.

Caroline E. Oks
Ryan P. Goodwin
Jennifer M. Rutter
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Counsel for Appellee*
*Cigna Healthcare, Inc.*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellee Cigna Health and Life Insurance Company, incorrectly named herein as Cigna Healthcare, Inc., by and through its undersigned counsel, hereby states the following:

1. Cigna Health and Life Insurance Company is a wholly-owned subsidiary of Connecticut General Life Insurance Company, which is a wholly-owned subsidiary of Connecticut General Corporation, which is a wholly-owned subsidiary of Cigna Holdings, Inc., which is a wholly-owned subsidiary of Cigna Holding Company, which is a wholly-owned subsidiary of The Cigna Group (f/k/a Cigna Corporation), a publicly traded corporation.

2. The Cigna Group has no parent corporation, and no publicly held corporation owns 10% or more of the stock of The Cigna Group.

Dated: August 28, 2026

*s/ Caroline E. Oks*
Caroline E. Oks

*Counsel for Appellee*

# TABLE OF CONTENTS

**Page**


CORPORATE DISCLOSURE STATEMENT .......... i

TABLE OF AUTHORITIES .......... v

STATEMENT REGARDING ORAL ARGUMENT .......... 1

INTRODUCTION .......... 1

COUNTERSTATEMENT OF THE ISSUES .......... 4

STATEMENT OF RELATED CASES .......... 5

STATEMENT OF THE CASE .......... 5

- A. The No Surprises Act .......... 5
  - 1. The NSA Banned Surprise Medical Bills and Limited Patients' Financial Responsibilities .......... 6
  - 2. The NSA Established a Non-Judicial Billing Dispute Resolution Process .......... 7
    - (a) Congress Created an Administrative Enforcement Scheme to Govern IDR Compliance .......... 8
    - (b) Congress Barred Judicial Intervention Except in Limited Circumstances .......... 11
- B. Procedural History of *SpecialtyCare, Inc. v. Cigna Healthcare, Inc.*, No. 24-cv-01378 .......... 12
  - 1. SpecialtyCare's Complaint and Cigna's Motion to Dismiss .......... 12
  - 2. The District Court Dismissed the Complaint in its Entirety .......... 13
  - 3. Consolidated Appeals .......... 14

SUMMARY OF THE ARGUMENT .......... 15

ARGUMENT .......... 18

- I. CONGRESS DID NOT UNAMBIGUOUSLY CREATE A RIGHT TO CONFIRM IDR DETERMINATIONS THROUGH FAA SECTION 9 .......... 18

A. FAA Section 9 Does Not Apply to the NSA and Does Not Provide a Legal Basis for Confirmation ............................................ 18

B. Applying FAA Section 9 to the NSA Fails Basic Principles of Statutory Interpretation ................................................ 18

C. The FAA Does Not Apply Because There is No Agreement Between the Parties ........................................................ 21

II. CONGRESS DID NOT UNAMBIGUOUSLY AUTHORIZE A PRIVATE RIGHT TO ENFORCE OR CONFIRM IDR DETERMINATIONS ........................................................................ 22

A. Congress Did Not Create an Express Right of Action Under the NSA ........................................................................ 244

B. The NSA Text and Structure Does Not Unambiguously Show Congress Impliedly Authorized a Private Right of Enforcement or Confirmation ......................................................... 25

1. The Text of the NSA Bars IDR Enforcement Actions ........................................................................ 29

2. The Structure of the NSA Shows Congress Authorized Only Administrative Enforcement and Remedies ........................................................................ 30

C. SpecialtyCare Has Not Shown the NSA Unambiguously Creates an Implied Right and Remedy ............................................. 34

1. The Party-Binding and Payment Provisions Do Not Overcome the Presumption Against Implied Rights When Viewed Against the NSA's Other Features ........................................................................ 34

2. Dissatisfaction with Congress's Policy Choices Does Not Warrant Augmenting the NSA ................................. 40

3. Congress Did Not Incorporate an Unexpressed Judicial Confirmation Mechanism Into the NSA ..................... 43

(a) Congress Did Not Authorize a General Right to IDR Confirmation .................................................... 44

(b) SpecialtyCare Conflates an FAA Summary Proceeding with The NSA ............................................ 45

III. SPECIALTYCARE LACKS STANDING TO SUE UNDER ERISA AND ITS CAUSE OF ACTION FAILS TO STATE A CLAIM....................48

A. SpecialtyCare Lacks Standing Because the NSA Protects Patients From Financial Liability and Shields Them From IDR Outcomes....................48

B. SpecialtyCare Fails to Articulate a Cognizable ERISA Claim....................52

IV. THE DISTRICT COURTS PROPERLY DISMISSED SPECIALTYCARE'S STATE-LAW CLAIMS....................54

CONCLUSION....................57

CERTIFICATION OF BAR MEMBERSHIP....................58

CERTIFICATE OF COMPLIANCE....................59

CERTIFICATION THAT E-BRIEF HAS BEEN VIRUS CHECKED....................60

CERTIFICATE OF SERVICE....................61

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adv. Gyn. & Laparoscopy of N. Jersey, P.C. v. Cigna Health & Life Ins. Co.*, 2024 WL 3159414 (D.N.J. June 25, 2024) (citing cases), *rev'd in part* No. 24-2212, 2026 WL 2030368 (3d Cir. July 13, 2026)....................52

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)....................48

*Agag v. Cigna Health & Life Ins. Co.*, 2026 WL 1021213 (D. Conn. Apr. 15, 2026), *appeal docketed*, No. 26-1241 (May 6, 2026)....................40

*Alexander v. Sandoval*, 532 U.S. 275 (2001)....................*passim*

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018)....................48, 49

*Am. Trucking Ass'n Inc. v. Del. River Joint Toll Bridge Comm'n*, 458 F.3d 291 (3d Cir. 2006)....................25

*Argueta-Orellana v. AG United States*, 35 F.4th 144 (3d Cir. 2022)....................34

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015)....................25, 37

*Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110 (2011)....................54, 55, 56

*Axis Neuromonitoring, LLC v. Aetna Inc.*, 824 F. Supp. 3d 217 (D. Conn. 2026)....................21, 24

*Azar v. Allina Health Servs.*, 587 U.S. 566 (2019)....................20

*Badgerow v. Walters*,
596 U.S. 1 (2022)....................45

*Bauer v. Elrich*,
8 F.4th 291 (4th Cir. 2021)....................55

*CardioNet, Inc. v. Cigna Health Corp.*,
751 F.3d 165 (3d Cir. 2014)....................49, 51

*Cisco Sys., Inc. v. Doe I*,
146 S. Ct. 1882 (2026)....................25, 33, 36, 40

*City & Cnty. of S.F. v. EPA*,
604 U.S. 334 (2025)....................20

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr.*,
508 U.S. 602 (1993)....................30

*Egbert v. Boule*,
596 U.S. 482 (2022)....................24

*Fleisher v. Standard Ins. Co.*,
679 F.3d 116 (3d Cir. 2012)....................52

*Freeman Pain Inst. P.A. v. Horizon Blue Cross Blue Shield of N.J.*,
No. 25-2507, 2025 WL 3268289 (D.N.J. Nov. 24, 2025)....................21, 42

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd*,
146 S. Ct. 1546 (2026)....................*passim*

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002)....................15

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003)....................55

*Guardian Flight, L.L.C. v. Health Care Serv. Corp.*,
140 F.4th 271 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1493 (2026)....................*passim*

*Guardian Flight LLC v. Health Care Serv. Corp.*,
735 F. Supp. 3d 742 (N.D. Tex. 2024)....................50

*Guardian Flight v. Aetna*,
789 F. Supp. 3d 214 (D. Conn. 2025)....................................................................44

*Hall St. Assocs. v. Mattel, Inc.*,
552 U.S. 576 (2008)..........................................................................................30

*Hein v. F.D.I.C.*,
88 F.3d 210 (3d Cir. 1996) ..................................................................................52

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017)............................................................................................36

*Hooven v. Exxon Mobil Corp.*,
465 F.3d 566 (3d Cir. 2006) ................................................................................52

*Interventional Pain Mgmt. v. Horizon Blue Cross Blue Shield of N.J.*,
2025 WL 3470569 (D.N.J. Dec. 3, 2025)...............................................................37

*Jaroslawicz v. M&T Bank Corp.*,
962 F.3d 701 (3d Cir. 2020) ................................................................................25

*Jeffrey Farkas, M.D., LLC v. 1199SEIU Nat'l Benefit Fund*,
No. 25-CV-57, 2026 WL 891659 (E.D.N.Y. Apr. 1, 2026)........................................6

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*,
677 F.3d 178 (3d Cir. 2012) ..........................................................................26, 39

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)..........................................................................................40

*Maracich v. Spears*,
570 U.S. 48 (2013)............................................................................................37

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013)..........................................................................................22

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985)..........................................................................................54

*McGovern v. City of Philadelphia*,
554 F.3d 114, 119 (3d Cir. 2009) .................................................................*passim*

*Med-Trans Corp. v. Cap. Health Plan, Inc.*,
700 F. Supp. 3d 1076 (M.D. Fla. 2023), *aff'd sub nom. Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110 (11th Cir. 2025) .......... 8, 38, 53

*Minisohn Chiropractic & Acupuncture Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J.*,
No. 23-01341, 2023 WL 8253088 (D.N.J. Nov. 29, 2023) .......... 49

*Mod. Orthopaedics of N.J. v. Premera Blue Cross*,
No. 25-cv-1087, 2025 WL 3063648 (D.N.J. Nov. 3, 2025) .......... *passim*

*Moya v. U.S. Dep't of Homeland Sec.*,
975 F.3d 120 (2d Cir. 2020) .......... 37

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
801 F.3d 369 (3d Cir. 2015) .......... 49

*Ne. Neurosurgical Assocs. v. Horizon Blue Cross Blue Shield of N.J.*,
No. 25-06288, 2025 WL 3282210 (D.N.J. Nov. 25, 2025) .......... 30

*Neurological Surgery, P.C. v. Aetna Health Inc.*,
511 F. Supp. 3d 267 (E.D.N.Y. 2021) .......... 6

*Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*,
145 F.4th 212 (2d Cir. 2025) .......... 8

*Olmsted v. Pruco Life Ins. Co.*,
283 F.3d 429 (2d Cir. 2002) .......... 21

*Order*, *Guardian Flight v. Aetna*,
No. 24-CV-0680, ECF No. 295 (D. Conn. Sept. 30, 2025) .......... 45

*Ottley v. Schwartzberg*,
819 F.2d 373 (2d Cir. 1987) .......... 47

*PG Publishing, Inc. v. Newspaper Guild of Pittsburgh*,
19 F.4th 308 (3d Cir. 2021) .......... 46, 47

*PHI Health, LLC v. Health Care Serv. Corp.*,
No. 25-C-12406, 2026 WL 1802985 (N.D. Ill. June 23, 2026) .......... 23, 40, 41

*PHI Health, LLC v. Optimum Choice, Inc.*,
826 F.Supp.3d 654 (D. Md. 2026)....................................................................40, 41

*Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*,
No. 16-01649, 2017 WL 751851 (D.N.J. Feb. 27, 2017)..................................49

*Rep. of Sudan v. Harrison*,
587 U.S. 1 (2019).................................................................................................36

*Richerson v. Jones*,
551 F.2d 918 (3d Cir. 1977) ...............................................................................20

*Rotkiske v. Klemm*,
589 U.S. 8 (2019).................................................................................17, 19, 22, 41

*Russello v. United States*,
464 U.S. 16 (1983)...............................................................................................48

*SpecialtyCare, Inc. v. Kaiser Found. Health Plan, Inc.*,
No. 24-CV-09342, 2026 WL 2043194 (N.D. Cal. July 14, 2026)...............28, 36

*Sperling v. Hoffmann-La Roche, Inc.*,
24 F.3d 463 (3d Cir. 1994) ..................................................................................21

*Suter v. Artist M.*,
503 U.S. 347 (1992)..............................................................................................25

*T.V. Seshan M.D. v. Blue Cross Blue Shield Ass'n*,
No. 25-CV-499, 2025 WL 3496382 (S.D.N.Y. Dec. 5, 2025)...........................29

*Teamsters Loc. 177 v. United Parcel Serv.*,
966 F.3d 245 (3d Cir. 2020) ..........................................................................46, 47

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979)..............................................................................................19

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
444 U.S. 11 (1979)................................................................................................39

*Tri-M Grp., L.L.C. v. Sharp*,
638 F.3d 406 (3d Cir. 2011) ..................................................................................43

*Umland v. PLANCO Fin. Servs., Inc.*,
542 F.3d 59 (3d Cir. 2008) .......................................................................54, 55

*US Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013)..................................................................................................52

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014)................................................................................................31

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000)................................................................................................49

*Wisniewski v. Rodale, Inc.*,
510 F.3d 294 (3d Cir. 2007) ...................................................................................27

*Worldwide Aircraft Servs., Inc. v. Freedom Life Ins. Co. of Am.*,
No. 8:25-CV-001158, 2025 WL 3551397 (M.D. Fla. Dec. 11,
2025) .......................................................................................................................35

*Worldwide Aircraft Servs., Inc. v. United Healthcare*,
No. 8:24-CV-2527, 2025 WL 3312169 (M.D. Fla. Nov. 28, 2025)..................38

*Ziglar v. Abbasi*,
582 U.S. 120 (2017)................................................................................................33

**Statutes**

5 U.S.C. § 580 ..............................................................................................18, 19

5 U.S.C. § 581 ........................................................................................................35

8 U.S.C. § 1254a ....................................................................................................36

9 U.S.C. § 9 .....................................................................................................*passim*

9 U.S.C. § 10 ...................................................................................................*passim*

9 U.S.C. § 13 ..........................................................................................................22

26 U.S.C. § 4980D ...............................................................................................9, 11

26 U.S.C. § 9816 ....................................................................................................11

26 U.S.C. § 9834 ......................................................................................................9

28 U.S.C. § 1367 ....................56

29 U.S.C. § 1132 ....................9, 10, 48, 52

29 U.S.C. § 1185e ....................9, 10

33 U.S.C. § 2236 ....................36

41 U.S.C. § 7107 ....................35

42 U.S.C. § 300gg-22 ....................9, 11, 31, 44

42 U.S.C. § 300gg-111 ....................*passim*

42 U.S.C. § 300gg-131 ....................7, 51

42 U.S.C. § 300gg-132 ....................6, 7, 51

42 U.S.C. § 300gg-134 ....................9

42 U.S.C. § 300gg-135 ....................50

42 U.S.C. § 10139 ....................36

42 U.S.C. § 2000bb-1 ....................24

47 U.S.C. § 207 ....................24

Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758-2890 (2020) ....................5, 12

**Rules**

Local Appellate Rule 28.2 ....................12

Rule 12(b)(6) ....................13

**Regulations**

45 C.F.R. §§ 150.301 ....................9, 31

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ....................26

CTRS. FOR MEDICARE & MEDICAID SERVS., *COMPLAINT DATA AND ENFORCEMENT REPORT ON HEALTH INSURANCE MARKET REFORMS*, https://www.cms.gov/files/document/december-2025-complaint-data-enforcement-report.pdf (last visited Aug. 28, 2026) ..................................32

CTRS. FOR MEDICARE & MEDICAID SERVS., PROVIDERS: SUBMIT A BILLING COMPLAINT, https://www.cms.gov/nosurprises/policies-and-resources/providers-submit-a-billing-complaint (last visited Aug. 28, 2026) ..........................................................................................10

H.R. Rep. 116-615 (2020)..........................................................................6, 7

U.S. DEP'T OF LABOR, *EBSA RESTORES NEARLY $1.4 BILLION TO EMPLOYEE BENEFIT PLANS, PARTICIPANTS, AND BENEFICIARIES*, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/ebsa-monetary-results (last visited Aug. 28, 2026)..........................................................................32

U.S. GOV'T ACCOUNTABILITY OFF., GAO-24-106335, ROLL OUT OF INDEPENDENT DISPUTE RESOLUTION PROCESS FOR OUT-OF-NETWORK CLAIMS HAS BEEN CHALLENGING (Dec. 2023), https://www.gao.gov/assets/870/864587.pdf....................................9, 10, 31, 32

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Cigna Healthcare, Inc. ("Cigna") agrees with Appellants SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC ("SpecialtyCare") that oral argument would materially assist the Court in addressing the legal issues presented by the consolidated appeals.

## INTRODUCTION

SpecialtyCare brought four actions against Cigna and three other insurers (together, "Appellees") seeking to confirm and enforce independent dispute resolution ("IDR") determinations under the federal No Surprises Act ("NSA"). The district courts dismissed all four actions. SpecialtyCare now appeals, asking this Court to do what the district courts would not—rewrite the NSA to recognize a private right of action against Appellees. But the district court decisions reflect the overwhelming judicial consensus—including the Fifth Circuit—that Congress did not authorize a private right for healthcare providers to enforce the NSA against insurers or confirm IDR determinations in federal court.

Courts analyzing the NSA's text and structure have concluded no right to confirmation or enforcement exists based on key statutory features. To start, the NSA provides no express right to seek IDR enforcement or confirmation. This omission is telling because Congress knows how to incorporate a right of action into

a statute and has done so many times. When no such right is expressly conferred, courts presume Congress did not intend one.

That presumption is backed by two features Congress did install in the NSA. *First*, the NSA bars "judicial review" of IDR determinations except for vacatur actions under Section 10 of the Federal Arbitration Act ("FAA"), which is not at issue here. *Second*, the NSA sets forth an administrative enforcement regime to govern IDR determinations. Congress empowered the United States Departments of Health and Human Services ("HHS"), Labor ("DOL"), and Treasury to police the IDR process and those agencies, along with the states, have exclusive authority to enforce IDR determinations. When applying the governing private rights of action framework, these deliberate choices show Congress did not intend for a private right to confirm or enforce IDR determinations.

At bottom, SpecialtyCare disagrees with the policy choices Congress made. SpecialtyCare claims the administrative remedies authorized in the NSA are insufficient to remedy IDR complaints, but made no allegation that it ever sought relief from the agencies charged with IDR enforcement. Instead, SpecialtyCare wants this Court to judicially supplement the NSA with rights Congress did not authorize.

SpecialtyCare's ERISA and state-law claims also fail. SpecialtyCare lacks standing to bring an ERISA claim through any alleged assignment of benefits

because patients have suffered no concrete injury. Indeed, the very hallmark of the NSA is that patients are held harmless from "surprise" medical bills and shielded from the IDR process. And SpecialtyCare's backdoor attempt to assert claims under state-law theories is improper. A plaintiff cannot use state-law claims to circumvent a federal statute that lacks a private right of action. For these reasons, the Court should affirm the district court judgments.

## COUNTERSTATEMENT OF THE ISSUES

1. Whether Congress unambiguously authorized an implied private right of action under the NSA for healthcare providers to seek judicial confirmation of IDR determinations through Section 9 of the FAA.

2. Whether Congress unambiguously authorized an implied private right of action under the NSA for healthcare providers to enforce or confirm IDR determinations in federal court.

3. Whether the district court properly dismissed SpecialtyCare's ERISA claim because: (a) SpecialtyCare lacks standing to bring an ERISA claim when the plan participants who allegedly assigned their claims have suffered no concrete injury, and (b) SpecialtyCare did not plead a valid assignment of benefits.

4. Whether the district court properly dismissed SpecialtyCare's state-law causes of action.[1]

---

[1] SpecialtyCare presents separate state-law claims in consolidated cases Nos. 26-1114 and 26-1864. *See* Br. 4 (Nos. 26-1114 & 26-1864). Cigna was not a party to those district court actions. Consistent with the Court's July 14, 2026 Order consolidating all four appeals for disposition and advising Appellees to join or adopt portions of their briefs by reference, ECF No. 43 (No. 26-1768), Cigna adopts the arguments related to those issues in the briefing filed by co-Appellees Aetna, Inc. and Meritain Health, Inc.

## STATEMENT OF RELATED CASES

In addition to the cases identified by SpecialtyCare, Cigna is a party to other appeals pending before the United States Court of Appeals for the Second Circuit concerning whether the NSA provides a private right of action to confirm or enforce IDR awards. *See Agag v. Cigna*, No. 26-1241; *Shareef Jandali Plastic Surgery, LLC v. Cigna*, Nos. 26-2287 and 26-2291; *New England PA, LLC v. Cigna*, No. 26-2289; and *Northeast Plastic Surgery Center, LLC v. Cigna*, No. 26-2290. Cigna is also a party to several pending NSA actions in federal and state courts.

## STATEMENT OF THE CASE

### A. The No Surprises Act

Congress enacted the NSA to protect healthcare patients from "surprise medical bills" incurred when they receive covered emergency medical services from an out-of-network provider, non-emergent services from an out-of-network provider at an in-network health care facility, or air ambulance services. Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758–2890 (2020), *codified at* 42 U.S.C. § 300gg-111 *et seq.* When an insured patient receives medical care under such circumstances, the NSA: (1) limits the patient's financial liability to the provider, and (2) shields the patient from billing disputes between the provider and the patient's healthcare benefits plan.

### 1. The NSA Banned Surprise Medical Bills and Limited Patients' Financial Responsibilities

The NSA prohibits a medical provider that is out-of-network with a patient's health plan or health insurance issuer (collectively, "payer") from balance billing or otherwise holding the patient liable for unanticipated out-of-network care beyond the patient's in-network cost sharing responsibility. *See Jeffrey Farkas*, *M.D., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 25-CV-57, 2026 WL 891659, at *3 (E.D.N.Y. Apr. 1, 2026) (citing 42 U.S.C. § 300gg-132(a)). Providers that do not have network contracts with a payer are known as "out-of-network" providers. *See Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 275 (E.D.N.Y. 2021). When a provider is "in-network" with a plan, the provider has agreed to a set rate for services. Out-of-network providers have not agreed to contractual rates, and payers generally reimburse those providers according to the out-of-network rates set forth by the applicable health plan. *Id.*

In some instances, a member chooses to visit an out-of-network provider voluntarily, and accepts the additional financial liability. But other times a member receives care from an out-of-network provider in "[s]ituations in which patients have little or no control over whether a provider is in- or out-of-network[.]" H.R. Rep. 116-615, at 51 (2020). Prior to the NSA, out-of-network providers often would hold patients liable for the balance of the bill, and issue "surprise medical bills" to unsuspecting patients. *Id.* "The financial liability imposed on patients by surprise

medical bills can be staggering." H.R. Rep. 116-615, at 52. Patients found themselves responsible for "highly inflated" charges. *Id.* at 53.

Under the NSA, however, covered patients are held harmless for costs beyond ordinary plan costs such as the deductible, copayment, or coinsurance. *See* 42 U.S.C. §§ 300gg-131, 300gg-132. If a provider bills a patient beyond the in-network cost share, "the provider shall reimburse the [patient] for the full amount paid by the [patient] in excess of the in-network cost-sharing amount for the treatment or services involved, plus interest[.]" *Id.* § 300gg-139(b).

### 2. The NSA Established a Non-Judicial Billing Dispute Resolution Process

Congress established a non-judicial dispute resolution process to channel billing disputes between providers and payers when they cannot agree on payment for NSA-eligible care. Under the NSA, the provider must submit the claim to the insured's health plan. 42 U.S.C. § 300gg-111(a)(1)(C)–(D). If dissatisfied with the payment determination, the provider may attempt to negotiate payment. *See id.* § 300gg-111(c)(1). If negotiations fail or the negotiation period is exhausted, the provider or payer may initiate the IDR process. *Id.* § 300gg-111(c)(1)(B).

The IDR process resembles "baseball-style" arbitration: the provider and payer submit final offers, and a certified IDR Entity ("CIDRE") must select one of the two proposed amounts. *Mod. Orthopaedics of N.J. v. Premera Blue Cross*, No. 25-cv-1087, 2025 WL 3063648, at *4 (D.N.J. Nov. 3, 2025). The parties are bound

to the IDR determination absent a fraudulent claim or misrepresentation of facts to the CIDRE, 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), and payment, if any, is owed within 30 days of the IDR determination," *id.* § 300gg-111(c)(6).

#### (a) *Congress Created an Administrative Enforcement Scheme to Govern IDR Compliance*

Based on the type of healthcare coverage—such as an individual insurance policy, fully insured group health plan, or self-funded group—health plans can be regulated by one or more state or federal agencies. To account for the differences in plan regulation, "the NSA simultaneously modified portions of the Public Health Service Act, the Internal Revenue Code, and [ERISA]." *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1079 (M.D. Fla. 2023), *aff'd sub nom. Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110 (11th Cir. 2025). Congress vested the federal agencies primarily responsible for regulating health plans under those statutes with authority over the IDR process. *See Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*, 145 F.4th 212, 218 (2d Cir. 2025) (explaining HHS, DOL, and Treasury "are charged with implementing and administering the [NSA]"). "The Act delegates to the Departments the task of devising the implementing regulations needed to make the program work." *Id.* at 219 (noting the NSA directs the agencies to establish a single IDR process (citing 42 U.S.C. § 300gg-111(c)(2)(A)).

Congress empowered those agencies to enforce NSA non-compliance, and specified roles for each agency, as well as state governments. *See, e.g.*, 42 U.S.C. § 300gg-22, § 300gg-134 (codifying HHS enforcement authority); 29 U.S.C. §§ 1132(a)(5), 1185e (codifying DOL enforcement authority); 26 U.S.C. §§ 4980D, 9834 (codifying Treasury enforcement authority). For instance, HHS enforces payer and provider non-compliance with the IDR process. 42 U.S.C. § 300gg-22(b)(2) (authorizing enforcement against payers for NSA non-compliance); *id.* § 300gg-134 (authorizing enforcement against providers for NSA non-compliance). HHS is authorized to impose per-day civil monetary penalties on payers for violations. *See* 42 U.S.C. § 300gg-22(b)(2); *see also* 45 C.F.R. §§ 150.301–.347. The enforcement scheme provides administrative review and fair hearing processes for payers to challenge penalties. *Id.* § 300gg-22(b)(2)(D). And HHS may refer unpaid penalties to the Attorney General to seek judicial enforcement for noncompliance. *Id.* § 300gg-22(b)(2)(F).

The Centers for Medicare & Medicaid Services ("CMS"), an agency within HHS, "oversee[s] the IDR process through complaint reviews and market conduct examinations." U.S. GOV'T ACCOUNTABILITY OFF., GAO-24-106335, ROLL OUT OF INDEPENDENT DISPUTE RESOLUTION PROCESS FOR OUT-OF-NETWORK CLAIMS HAS BEEN CHALLENGING (Dec. 2023), https://www.gao.gov/assets/870/864587.pdf, at 36 ("GAO-24-106335"). Providers may submit complaints against non-compliant

payers for review and potential enforcement proceedings. *See id.* at 36–37. Providers who "believe an entity is not complying with the federal [IDR] process, or . . . want to report a violation of the protections of the [NSA]," may submit complaints regarding alleged IDR violations.[2] If a payer fails to timely pay an IDR determination, CMS "require[s] the issuer to pay the provider the determined award amount." GAO-24-106335, at 36–37.

The NSA "was also codified under the DOL's authority to protect employee benefits." *Mod. Orthopaedics*, 2025 WL 3063648, at *10 (citing 29 U.S.C. § 1185e). The "DOL has the broadest enforcement powers of the Departments, with sweeping authority to initiate investigations and civil enforcement proceedings." *Id.* (citing 29 U.S.C. §§ 1132(a)(3), 1134(a)(3)). These enforcement powers have not gone unused. Indeed, "DOL has been responding to individual complaints relating to the IDR process and late or non-payments" of IDR determinations. *Id.* (citing GAO-24-106335 at 39–40). As of August 2023, DOL "received 12,585 complaints related to the [NSA]; 11,485 of those complaints had been closed[.]" GAO-24-106335 at 38–39 & n.61.

---

[2] *See* CTRS. FOR MEDICARE & MEDICAID SERVS., PROVIDERS: SUBMIT A BILLING COMPLAINT, https://www.cms.gov/nosurprises/policies-and-resources/providers-submit-a-billing-complaint (last visited Aug. 28, 2026).

Congress also vested Treasury with IDR enforcement power because "Treasury has a unique oversight role for health care plans governed by ERISA." *Mod. Orthopaedics*, 2025 WL 3063648, at *11. "Like ERISA . . . the NSA was codified into the Internal Revenue Code as part of Treasury's responsibility to enforce the NSA," which "incorporates compliance with the IDR process—including the timely payment of awards." *Id.* (citing 26 U.S.C. § 9816(c)(6)). Thus, "[w]here a group health plan is failing to comply with the requirements of these acts, the Treasury has the authority to levy an increasingly heavy excise tax for each day the party remains out of compliance." *Id.* (citing 26 U.S.C. § 4980D(b)(1)). The NSA also permits states to implement their own "enforcement mechanisms and penalties . . . in accordance with applicable state law." *Id.* at *10 (citing 42 U.S.C. § 300gg-22).

**(b) *Congress Barred Judicial Intervention Except in Limited Circumstances***

Congress explicitly limited judicial review of IDR determinations. An IDR determination "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the FAA. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

Section 10(a) of the FAA governs judicial review of actions to *vacate* arbitral awards. 9 U.S.C. § 10(a). Under Section 10(a), a party may seek vacatur in "the

United States court in and for the district wherein the award was made" based on the circumstances in Section 10(a)(1)–(4). *Id.*

Section 9 of the FAA governs actions for judicial *confirmation* of arbitral awards. 9 U.S.C. § 9. Unlike Section 10(a), Congress did not incorporate Section 9 into the NSA. Nor did Congress incorporate any mechanism for courts to confirm IDR determinations. *See generally* 42 U.S.C. § 300gg-111 *et seq.*

### B. Procedural History of *SpecialtyCare, Inc. v. Cigna Healthcare, Inc.*, No. 24-cv-01378

#### 1. SpecialtyCare's Complaint and Cigna's Motion to Dismiss

SpecialtyCare sued Cigna in a seven-count complaint claiming Cigna failed to timely remit payment of IDR determinations issued under the NSA. A-039–051.[3] In Count One, titled "Petition to Confirm Arbitration Awards (9 U.S.C. § 9)," SpecialtyCare sought confirmation of IDR determinations under FAA Section 9. A-045–046, ¶¶ 33–37. In Counts Two and Three, titled "Action for Nonpayment of IDR Determination (42 U.S.C. § 300gg-111(c)(6))" and "Implied Right of Action under the NSA," SpecialtyCare sought to enforce alleged substantive NSA violations. A-046–047, ¶¶ 38–47. In Count Four, SpecialtyCare claimed Cigna improperly denied benefits under ERISA by failing to pay the IDR determinations.

[3] Pursuant to Local Appellate Rule 28.2, "A-" denotes the appendix filed in No. 26-1768, in which Cigna is the Appellee, and which is the same appendix for No. 26-1769. "Appx" denotes the appendix filed in Nos. 26-1114 and 26-1864, as identified therein. References to briefs include the appropriate case number.

A-047–048, ¶¶ 48–56. SpecialtyCare also advanced claims for open account, bad faith, and unjust enrichment (Counts V–VII). A-048–050, ¶¶ 57–77.

Cigna moved to dismiss pursuant to Rule 12(b)(6). A-072. Cigna argued that Counts I through III fail because Congress did not authorize a private right of action under the NSA for SpecialtyCare to seek enforcement or confirmation of IDR determinations in federal court, and that FAA Section 9 is inapplicable to the NSA. A-087–096. Cigna also argued that SpecialtyCare lacks standing to bring an ERISA claim (Count IV), A-096–100, and that the state-law claims (Counts V, VI and VII) independently fail to state a claim. A-100–104.

#### 2. The District Court Dismissed the Complaint in its Entirety

The Magistrate Judge issued a Report and Recommendation that recommended granting Cigna's Motion to Dismiss in full. A-005-019. The court concluded that "Congress's decision to incorporate only Section 10 of the FAA into the [NSA] indicates that Congress deliberately left out Section 9," and therefore the NSA "does not contemplate enforcement of IDR determinations through Section 9 of the FAA." A-009–010 (quotation marks omitted). The court also agreed with the "overwhelming weight of authority," and concluded that the NSA "does not create an express or implied private right of action to enforce IDR determinations[.]" A-015. The court rejected SpecialtyCare's ERISA claim, finding that "[b]ecause the plan participants lack a 'concrete stake in this lawsuit,' even as a purported assignee,

SpecialtyCare similarly lacks the Article III standing necessary to bring an ERISA claim." A-016. The court also concluded that "SpecialtyCare has not raised – and the Court has not identified – any considerations of judicial economy, convenience or fairness to the parties that would justify [supplemental jurisdiction over SpecialtyCare's state-law claims]." A-018.

On March 26, 2026, the district court adopted the Report and Recommendation in full and dismissed SpecialtyCare's claims with prejudice. A-003–004. SpecialtyCare filed its Notice of Appeal on April 3, 2026. A-001–002.

### 3. Consolidated Appeals

On April 15, 2026, this Court consolidated this appeal with No. 26-1769. *See* Order, No. 26-1768, ECF No. 4. On July 14, 2026, this Court consolidated all four related appeals, Nos. 26-1114, 26-1864, 26-1768, and 26-1769, for disposition before the same merits panel "[b]ecause all four appeals appear to raise similar issues." *See* Order, No. 26-1768, ECF No. 43.[4]

[4] Consistent with the Court's July 14 Order, Cigna adopts and incorporates by reference the procedural histories in those cases as set forth by co-Appellees UMR, Inc., Aetna, Inc., and Meritain Health, Inc.

## SUMMARY OF THE ARGUMENT

The district courts here, supported by the overwhelming weight of authority, correctly concluded that Congress did not authorize an express or implied private right of action in the NSA for healthcare providers to enforce or confirm IDR determinations in federal court. The text and structure of the NSA, supported by fundamental principles of statutory construction, confirm those determinations. Applying the governing private rights of action framework to the NSA, SpecialtyCare cannot satisfy its burden to show Congress unambiguously intended to create a new private right and remedy enforceable in federal court. Indeed, "the NSA's text and structure point in the opposite direction." *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 275 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1493 (2026).

The NSA contains no express right to IDR confirmation or enforcement, nor does SpecialtyCare claim otherwise. When Congress does not expressly create a new privately enforceable right, its intention to have authorized one by implication must be found "in clear and unambiguous terms." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). That standard is set intentionally high because misinterpreted judicial augmentation of a statute is "difficult to reconcile with the Constitution's separation of legislative and judicial power[.]" *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd*, 146 S. Ct. 1546, 1553 (2026) (citation omitted).

Textual features of the NSA foreclose SpecialtyCare's argument that Congress clearly and unambiguously created a private right to sue for IDR enforcement and confirmation. Congress installed a judicial bar over IDR determinations except when a party seeks vacatur under FAA Section 10. The NSA does not incorporate FAA Section 9, which provides a right to judicial confirmation. The explicit incorporation of FAA Section 10—but not neighboring Section 9—provides a contextual clue: by incorporating one section of a preexisting statute but omitting another, courts presume Congress made a deliberate choice not to provide an IDR confirmation mechanism. And the presence of a preexisting express right of action—the right to seek IDR vacatur—also presumes Congress did not create other rights by implication. *FS Credit*, 146 S. Ct. at 1555.

The NSA's structure reinforces these presumptions. Congress empowered HHS, DOL, Treasury, and state regulators with authority to enforce IDR determinations. These powers include assessing penalties for IDR non-compliance and compelling payment through regulatory efforts—including, if necessary, the ability to seek judicial enforcement of those penalties. Mindful that different health plans are governed by different agencies, Congress incorporated enforcement mechanisms applicable to each. These choices presume Congress acted intentionally when it codified IDR enforcement. When reviewing the full statutory landscape,

dozens of courts have concluded the NSA shows no unambiguous Congressional intent to create a private right to IDR enforcement or confirmation.

SpecialtyCare downplays the administrative enforcement scheme and dismisses the judicial review bar. But its claim that agency enforcement is not sufficient improperly seeks to "second guess Congress's decision[s]." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019). Nor does SpecialtyCare allege that it ever sought administrative relief before filing an action in federal court. And its claim that the bar on judicial review does not bar judicial enforcement "is a distinction without a difference." *Guardian Flight*, 140 F.4th at 275. Its best authority to show rights creating intent is a case that interpreted a statute lacking any administrative enforcement—let alone the tri-agency scheme of the NSA—or an explicit bar on judicial remedies, thus bearing little resemblance to the NSA.

SpecialtyCare also cannot bring an ERISA claim. It lacks Article III standing because patients suffer no harm from the IDR process; they are shielded entirely from payment disputes between providers and payers. It also failed to plausibly allege that patients had validly assigned their benefits. And its state-law claims all seek to improperly circumvent the lack of a federal cause of action. The Court should affirm.[5]

---

[5] Cigna adopts by reference the Standard of Review from UMR (No. 26-1769).

# ARGUMENT

## I. CONGRESS DID NOT UNAMBIGUOUSLY CREATE A RIGHT TO CONFIRM IDR DETERMINATIONS THROUGH FAA SECTION 9

### A. FAA Section 9 Does Not Apply to the NSA and Does Not Provide a Legal Basis for Confirmation

Congress did not incorporate FAA Section 9 into the NSA. SpecialtyCare claims Congress implicitly incorporated Section 9, which gives rise to a right of action to confirm IDR determinations. Br. 48 (No. 26-1768). Applying fundamental interpretive principles, that argument fails for at least three reasons. *First*, Congress knows how to incorporate the confirmation mechanism in Section 9 into other statutes and has done so before. *Second*, Congress incorporated FAA Section 10 into the NSA—but not Section 9—and under settled principles of statutory construction, the choice to incorporate one section of a statute while omitting a neighboring section is deemed deliberate. *Third*, SpecialtyCare's position requires this Court to read Section 9 into the NSA, thereby impermissibly amending the statute. The FAA is further inapplicable because IDR proceedings are not arbitrations, nor did the parties agree to arbitrate—a Section 9 requirement.

### B. Applying FAA Section 9 to the NSA Fails Basic Principles of Statutory Interpretation

As the Fifth Circuit explained, Congress knows how to incorporate FAA Section 9 into a statute to create a private right to confirmation, and has done so previously. *Guardian Flight*, 140 F.4th at 275 (explaining, as an example, under 5

U.S.C. § 580(c) Congress incorporated the confirmation provisions of the FAA when providing that "'[a] final award is binding on the parties to the arbitration proceeding, and may be enforced pursuant to sections 9 through 13 of' the FAA") (quoting 5 U.S.C. § 580(c)). That statute allows agencies to resolve certain disputes through arbitration rather than formal agency adjudication, and Section 580(c) authorizes the right to seek judicial confirmation of that arbitral outcome.

Courts presume that Congress knows how to incorporate statutory provisions into new enactments and "[a]textual judicial supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske*, 589 U.S. at 14. Applied here, because Congress is familiar with how to incorporate FAA Section 9 into statutes, and has done so before, shows that Congress did not intend for Section 9 to apply to the NSA. "So, Congress knew how to create a private right of action in the NSA—and has done so elsewhere—but declined to do so," in the NSA. *Guardian Flight*, 140 F.4th at 276 (citing cases), *see also Mod. Orthopaedics*, 2025 WL 3063648, at *5 ("Congress knows how to incorporate Section 9, yet it chose not to in the NSA."). "Obviously, then, when Congress wished to provide" a mechanism for judicial review, "it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979).

Congress also incorporated FAA Section 10. The choice to incorporate Section 10 but not neighboring Section 9 evinces Congress's intent not to allow judicial confirmation of IDR determinations because "[w]hen Congress omits from a statute a provision found in similar statutes, the omission is typically thought deliberate." *Guardian Flight*, 140 F.4th at 276–77 (citation omitted).

As this Court has stated, "where a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute is significant to show a different intention existed." *Richerson v. Jones*, 551 F.2d 918, 928 (3d Cir. 1977) (citation omitted). The omission of Section 9 "cannot be viewed as accidental or inconsequential." *City & Cnty. of S.F. v. EPA*, 604 U.S. 334, 349 (2025). The express inclusion of one FAA section (Section 10) implies the exclusion of another (Section 9). *See Azar v. Allina Health Servs.*, 587 U.S. 566, 576–77 (2019) (holding where "Congress expressly borrowed one of the [statutory] exemptions . . . by cross-referencing it" but did not cross-reference another exemption, "Congress's choice to include a cross-reference to one but not the other of the [statute's] neighboring exemptions strongly suggests it acted intentionally and purposefully in the disparate decisions" (citation omitted)).

"[T]he legislative decision to permit petitions brought under § 10(a) of the FAA, but not § 9, suggests that Congress did not intend for federal courts to become involved with the enforcement of IDR awards—as compared to *vacatur* of them."

*Axis Neuromonitoring, LLC v. Aetna Inc.*, 824 F. Supp. 3d 217, 224 (D. Conn. 2026). In other words, "Congress's explicit provision of a private right of action to enforce one section of a statute," here, the right to seek judicial vacatur under 9 U.S.C. § 10(a), "suggests that omission of an explicit private right to enforce [under Section 9] was intentional." *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 433 (2d Cir. 2002). The district court reached the same conclusion: "In the Court's view, Congress's decision to incorporate only Section 10 of the FAA into the No Surprises Act 'indicates that Congress deliberately left out' Section 9." A-009 (quoting *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 470 (3d Cir. 1994)).

### C. The FAA Does Not Apply Because There is No Agreement Between the Parties

The district courts also joined other courts in finding the NSA's text and structure wholly incompatible with the FAA. *See Freeman Pain Inst. P.A. v. Horizon Blue Cross Blue Shield of N.J.*, No. 25-2507, 2025 WL 3268289, at *5 (D.N.J. Nov. 24, 2025) ("While there are superficial similarities between an IDR determination and an arbitration, the FAA is clear that it applies only where parties 'in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration.'" (quoting 9 U.S.C. § 9)). The lack of a written agreement between the parties consenting to IDR "removes the IDR process entirely from eligibility for confirmation under the FAA[.]" *Id.* at *5.

Importing Section 9 into the NSA would also render superfluous the Section 13(a) requirement that a party seeking confirmation file the arbitration agreement with the court—which SpecialtyCare did not and cannot do. 9 U.S.C. § 13(a); *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (stating the "canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"). The incompatibility of an NSA IDR determination with the statutory prerequisites for FAA confirmation further renders Section 9 inapplicable.

SpecialtyCare seeks to override Congress and amend the NSA. Only then can it unlock an unexpressed right to IDR confirmation through the FAA. But that requires reading Section 9 *into* the NSA, which is contrary to the "fundamental principle of statutory interpretation that absent provision[s] cannot be supplied by the courts." *Rotkiske*, 589 U.S. at 14 (citation modified). SpecialtyCare thus has no cause of action for IDR confirmation through FAA Section 9.

## II. CONGRESS DID NOT UNAMBIGUOUSLY AUTHORIZE A PRIVATE RIGHT TO ENFORCE OR CONFIRM IDR DETERMINATIONS

All four district courts correctly held that Congress did not authorize a private right of action under the NSA for providers to privately confirm or enforce IDR determinations and obtain damages. The NSA does not *expressly* authorize such rights—that is undisputed. Nor does the NSA's text and structure unambiguously

demonstrate that Congress impliedly intended to create a private right of action. Congress established an administrative enforcement scheme stretched across several federal agencies and the states to enforce IDR determinations, and authorized administrative remedies for aggrieved providers. Going further, Congress also barred judicial review of IDR determinations except in narrow circumstances not applicable here.

Under the guiding interpretive framework governing private rights of action, these textual and structural clues inform congressional intent and foreclose recognizing an implied right. Most courts—including the four district courts here, the Fifth Circuit, and dozens of other district courts—have concluded that Congress did not intend to create a private right of action under the NSA to confirm or enforce IDR determinations and have dismissed actions like SpecialtyCare's.[6] And even if it were a close call—which it is not—an inferred right must clear a high bar which SpecialtyCare has not met. The Court should join the chorus of cases that declined to find an implied private right of action to confirm or enforce IDR determinations and affirm the district court decisions.

---

[6] *See, e.g.*, A-011 n.3, A-014 n. 6 (collecting cases); *see also PHI Health, LLC v. Health Care Serv. Corp.*, No. 25-C-12406, 2026 WL 1802985 (N.D. Ill. June 23, 2026) (collecting additional cases).

### A. Congress Did Not Create an Express Right of Action Under the NSA

The polestar of private rights of action analysis is that "Congress determines who may sue to enforce federal law." *FS Credit*, 146 S. Ct. at 1552. "[L]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). As such, "creating a cause of action is a legislative endeavor." *Egbert v. Boule*, 596 U.S. 482, 491 (2022).

"When Congress creates a private right of action, it usually does so expressly." *FS Credit*, 146 S. Ct. at 1552. For instance, "[a] person whose religious exercise has been burdened in violation of [the Religious Freedom Restoration Act] may assert that violation as a claim or defense in a judicial proceeding." *Id.* (quoting 42 U.S.C. § 20000bb-1(c)). At other times, Congress authorizes both administrative and judicial remedies. Under the Communications Act, persons claiming to be damaged by a common carrier "may either make complaint to the [Federal Communications] Commission . . . or may bring suit for the recovery of the damages . . . in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies." 47 U.S.C. § 207.

That is not the case here. Courts have uniformly held that "the NSA contains no express right of action to enforce or confirm an IDR award." *Guardian Flight*, 140 F.4th at 275; *see also Axis Neuromonitoring*, 824 F. Supp. 3d at 223 ("[T]he

NSA clearly does not contemplate an express private right of action to enforce or confirm an IDR award”). No court has held otherwise, nor does SpecialtyCare argue differently. *See* A-012. “And since Congress creates federal causes of action, where the text of a statute does not provide a cause of action, there ordinarily is no cause of action.” *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 709 (3d Cir. 2020) (citation modified).

### B. The NSA Text and Structure Does Not Unambiguously Show Congress Impliedly Authorized a Private Right of Enforcement or Confirmation

When Congress does not expressly authorize a right of action, a plaintiff bears the burden to show that Congress “unambiguously conferred” a new private right despite the lack of express text. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 332 (2015); *Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (explaining plaintiff’s burden). That high bar was set before the Supreme Court reiterated last term that it had “‘sworn off the habit’ of implying private rights of action[.]” *FS Credit*, 146 S. Ct. at 1555 (quoting *Sandoval*, 532 U.S. at 287 (citation modified)); *see also Cisco Sys., Inc. v. Doe I*, 146 S. Ct. 1882, 1890 (2026) (explaining the Court had “rejected the practice of fashioning rights of action” (quoting *FS Credit*, 146 S. Ct. at 1553)).

Before *FS Credit* and *Cisco*, courts found private rights “only where [they could] *confidently conclude* Congress so intended.” *Am. Trucking Ass’n Inc. v. Del. River Joint Toll Bridge Comm’n*, 458 F.3d 291, 303 (3d Cir. 2006) (citation omitted).

Because Congress knows how to authorize a right of action, when the text does not explicitly authorize a right, this Court "presume[s] that Congress did not intend one." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 187 (3d Cir. 2012). That presumption reflects Article III limitations and the separation of legislative and judicial functions. *See FS Credit*, 146 S. Ct. at 1553; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 313–17 (2012) (explaining the presumption against implied rights of action considering the "thousands of statutory prohibitions that do explicitly provide for private rights of action").

Beginning with *Alexander v. Sandoval*, the Supreme Court recalibrated its implied rights of action analysis and closely cabined the circumstances when—if ever—courts could find that Congress impliedly authorized a right that it did not expressly define. *See Sandoval*, 532 U.S. at 287 (explaining that recognizing remedies through implied causes of action occurred during an "*ancien regime*" and the Court has "not returned to it since"); *McGovern v. City of Philadelphia*, 554 F.3d 114, 119 (3d Cir. 2009) (noting *Sandoval* established the modern "method for determining whether an implied right of action exists").

To determine whether a statute authorizes a private right of action by implication, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a

private remedy." *Sandoval*, 532 U.S. at 286–87. "Statutory intent . . . is determinative," because "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter or how compatible with the statute." *Id.*; *see also Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 303 (3d Cir. 2007) (noting Congressional intent is the "sole touchstone of our inquiry"). This Court considers "the text and structure of the statute; the existence or non-existence of a comprehensive remedial scheme elsewhere in the same statute; the statute's legislative history; and Congress's explicit creation of private rights in similar statutes enacted during the same time period." *McGovern*, 554 F.3d at 119.

In *FS Credit*, the Court framed the *Sandoval* standard, explaining that "[r]ather than augmenting statutes, we interpret them." 146 S. Ct. at 1553. "If a statute does not spell out a right of action, we examine the statute's text and structure to determine whether it implicitly provides one." *Id.* Certain statutory features guide this analysis. "Language that 'focus[es] on the person regulated rather than the individuals protected' does not fit the bill." *Id.* (quoting *Sandoval*, 532 U.S. at 289). Courts also examine whether an administrative remedial scheme already exists. *Id.* at 1553–55. "And language establishing an express 'remedial scheme' elsewhere in the statute may 'foreclose a private cause of action to enforce even those statutes that admittedly create substantive private rights.'" *Id.* at 1553 (quoting *Sandoval*, 532 U.S. at 290 (citation modified)). When a statute contains both rights-creating

language and a preexisting remedial scheme, the remedy Congress expressly enacted will foreclose a remedy Congress did not. *Id.* Lastly, when a statute contains an express right of action elsewhere, courts presume Congress did not imply others. *Id.* at 1555.

The district courts here applied the proper governing framework and found that "the No Surprises Act does not create an express or implied private right of action to enforce IDR determinations," and dismissed SpecialtyCare's complaints. A-015 (No. 26-1768), A-034 (No. 26-1769); *see also* Appx006 ("[N]othing about the structure of the NSA evinces a Congressional intent to create a private cause of action to enforce IDR awards."); Appx019 ("I join the majority in finding the NSA does not create a private right of action for the reasons articulated in the Fifth Circuit's decision in *Guardian Flight*."). As another court observed: "To the Court's knowledge, no case decided since *Sandoval* has found an implied private right of action where Congress enacted administrative enforcement provisions like those present here outside of this context." *SpecialtyCare, Inc. v. Kaiser Found. Health Plan, Inc.*, No. 24-CV-09342, 2026 WL 2043194, at *4 (N.D. Cal. July 14, 2026).

Courts here and elsewhere have based their determinations on several key textual and structural factors, including the lack of an express right of action, the strong presumption against implied rights, as well as the NSA's administrative remedial scheme and the bar on judicial review. The existence of either of those two

features dooms SpecialtyCare's claim that Congress unambiguously intended to create an implicit judicial remedy and when viewed collectively ends the inquiry altogether.

### 1. The Text of the NSA Bars IDR Enforcement Actions

Under the NSA, IDR determinations "*shall not be subject to judicial review*," except in an action under FAA Section 10(a)(1)–(4). 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (emphasis added). Section 10(a) governs vacatur actions and is not applicable here. The judicial review bar evinces Congress's intention not to create a private right of action to confirm or enforce an IDR determination. *See T.V. Seshan M.D. v. Blue Cross Blue Shield Ass'n*, No. 25-CV-499, 2025 WL 3496382, at *8 (S.D.N.Y. Dec. 5, 2025) ("The Court cannot ignore the plain language of the statute and interpret language forbidding judicial review except to vacate an award to mean forbidding judicial review except to vacate *or enforce* an award." (citation modified)).

Except for vacatur actions, Congress closed the door to any other judicial involvement in the IDR process. *See Guardian Flight*, 140 F.4th at 275 ("The NSA expressly *bars* judicial review of IDR awards *except* as to the specific provisions borrowed from the FAA."). The Fifth Circuit concluded that the "NSA's plain text bars this suit" because courts cannot "find an implied right of action where Congress expressly forecloses it." *Id.* at 276. Congress also declined to incorporate any express

confirmation or enforcement mechanism and the NSA's "bar on judicial review strongly suggests Congress did not insert a private right of action into the statute." *Ne. Neurosurgical Assocs. v. Horizon Blue Cross Blue Shield of N.J.*, No. 25-06288, 2025 WL 3282210, at *6 (D.N.J. Nov. 25, 2025).

The NSA's judicial review bar is broad. "Judicial review" encompasses actions seeking to confirm, modify, vacate, or enforce an IDR determination. *See Guardian Flight*, 140 F.4th at 275 ("The term 'judicial review' is broad enough to include a court's order to enforce an IDR award."). The Fifth Circuit's reading comports with how courts have interpreted the term. For instance, "courts interpreting other statutes, including the FAA, have held that 'judicial review' includes actions that seek to confirm or enforce a dispute resolution award." *Id.* at 275–76 & n.4 (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 611 (1993) (explaining ERISA "provides for *judicial review* of the arbitrator's decision by an action in the district court to enforce, vacate, or modify the award" (emphases added))); *see also Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (explaining the FAA "provides for expedited *judicial review* to confirm, vacate, or modify arbitration awards" (emphasis added)).

### 2. The Structure of the NSA Shows Congress Authorized Only Administrative Enforcement and Remedies

The omission of a private right of action also comports with the NSA's structure. Rather than provide private enforcement rights, Congress vested three

administrative agencies and the states with enforcement authority over the IDR process, including IDR determinations. The existence of such a carefully designed remedial scheme matters: it shows Congress's choice to delegate enforcement to administrative agencies—not courts. SpecialtyCare may disagree with this choice, but cannot disregard it.

Congress amended the Public Health Service Act ("PHSA"), Internal Revenue Code, and ERISA to incorporate existing administrative enforcement mechanisms into the NSA. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) (explaining the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (citation omitted)). Congress "empowered HHS to assess penalties against insurers for failure to comply with the NSA," rather than creating a judicial remedy. *Guardian Flight*, 140 F.4th at 277. Acting through CMS, HHS oversees provider complaints—including those concerning late or non-payment of IDR determinations—and compels IDR payment when appropriate. *See* GAO-24-106335 at 36. Those tools include the power to impose per-day monetary civil penalties for IDR violations. *See* 42 U.S.C. § 300gg-22(b)(2); 45 C.F.R. §§ 150.301–.347; *see also Guardian Flight*, 140 F.4th at 277 (explaining HHS authority under NSA).

"If CMS determines that a party is non-compliant with the IDR process regulations, the agency could require corrective actions or issue a civil monetary penalty against the party." GAO-24-106335 at 36. For a failure to make IDR payment, CMS "require[s] the issuer to pay the provider the determined award amount." *Id.* at 36–37. If all those measures fail, HHS may refer disobedient payers to the Attorney General to seek judicial enforcement. *See id.* § 300gg-22(b)(2)(F).

As detailed above, Congress also assigned enforcement roles to the Departments of Treasury and Labor, as well as to the states. These enforcement mechanisms are ongoing. DOL announced $67 million in Fiscal Year 2025 NSA recoveries from handling 27,000 complaints.[7] And HHS announced more than $30 million "in direct monetary relief to consumers and providers."[8] The scope of enforcement authority reflects Congress's attention to the long-standing roles each department, and the states, have in health care regulation. *See Mod. Orthopaedics*, 2025 WL 3063648, at *10–11 (detailing enforcement powers of HHS, DOL, and the Treasury).

---

[7] *See* U.S. DEP'T OF LABOR, *EBSA RESTORES NEARLY $1.4 BILLION TO EMPLOYEE BENEFIT PLANS, PARTICIPANTS, AND BENEFICIARIES*, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/ebsa-monetary-results (last visited Aug. 28, 2026).

[8] *See* CTRS. FOR MEDICARE & MEDICAID SERVS., *COMPLAINT DATA AND ENFORCEMENT REPORT ON HEALTH INSURANCE MARKET REFORMS*, https://www.cms.gov/files/document/december-2025-complaint-data-enforcement-report.pdf (last visited Aug. 28, 2026).

The existence of an administrative remedy is strong evidence Congress intended it to be exclusive. *See Sandoval*, 532 U.S. at 290–91 (noting that the inclusion of a remedial scheme in the statute shows Congress "intended to preclude" any other remedy); *FS Credit*, 146 S. Ct. at 1555 ("[T]he express provision of one method of enforcement suggests that Congress intended to preclude others." (citation modified)). This Court also looks to the existence of an express remedial scheme as evidence that Congress did not impliedly intend to authorize a parallel remedy. *See McGovern*, 554 F.3d at 119 (factoring the "existence or non-existence" of a preexisting remedial scheme).

The interpretive framework applied in *FS Credit* is conclusive here. The Court focused on the Investment Company Act's ("ICA") agency enforcement scheme in concluding that "Congress's decision to create a comprehensive agency enforcement scheme" shows Congress did not imply a private enforcement right. *FS Credit*, 146 S. Ct. at 1554. And like the ICA, the NSA has an existing right of action–for vacatur of IDR determinations, which also weighs against "conclud[ing] that Congress implicitly created a private remedy in one provision when it explicitly did so in another." *Id.* at 1555. In fact, when "Congress has created 'an alternative remedial structure,' then '*that alone*' precludes the creation of a cause of action. *Cisco*, 146 S. Ct. at 1891 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017)).

* * * *

In sum, the NSA: (i) does not authorize an express private right to confirmation or enforcement; (ii) explicitly bars most judicial review of IDR determinations; and (iii) sets forth a carefully calibrated administrative scheme governing IDR enforcement, leveraging existing regulatory tools to enforce compliance and delegating longstanding oversight roles to agencies depending on the plan type. These textual and structural features yield one conclusion—the NSA does not show unambiguous congressional intent to create an implied right to judicial enforcement or confirmation.

### C. SpecialtyCare Has Not Shown the NSA Unambiguously Creates an Implied Right and Remedy

#### 1. The Party-Binding and Payment Provisions Do Not Overcome the Presumption Against Implied Rights When Viewed Against the NSA's Other Features

SpecialtyCare relies on an isolated reading of the text "binding" the parties to IDR determinations, along with the 30-day payment provision, to argue that the NSA equips private litigants with implicit enforcement powers. 42 U.S.C. §§ 300gg-111(c)(5)(e), (c)(6). It does not. SpecialtyCare's narrow interpretation misreads the text, fails to establish Congressional intent to create both an implied private right and remedy, ignores the broader NSA structure, and disregards governing interpretive principles.

SpecialtyCare's reliance on the binding clause as an implied private rights creator disregards the fundamental principle that statutory provisions should be read harmoniously. *See, e.g.*, *Argueta-Orellana v. AG United States*, 35 F.4th 144, 148 (3d Cir. 2022). Here, subparagraph (I) of 42 U.S.C. § 300gg-111(c)(5)(E)(i) should be interpreted alongside subparagraph (II). Because subparagraph (II) unambiguously limits judicial relief to vacatur actions under FAA Section 10(a) and bars all other judicial review, subparagraph (I) should not be read to *imply* a right to confirm or enforce an IDR award when its sister provision explicitly forbids it. "Federal courts have previously found this distinction critical, as the NSA provides only a private right of action to vacate an IDR award, not to enforce it." *Worldwide Aircraft Servs., Inc. v. Freedom Life Ins. Co. of Am.*, No. 8:25-CV-001158, 2025 WL 3551397, at *2 (M.D. Fla. Dec. 11, 2025).

SpecialtyCare argues that it seeks only judicial enforcement, not judicial review, so the review bar does not apply. "That is a distinction without a difference." *Guardian Flight*, 140 F.4th at 275 (explaining "judicial review" encompasses enforcement and confirmation actions). Congress uses "judicial review" to refer to confirmation actions, showing the term is broad enough to include a court's order confirming or enforcing an IDR determination. Section 581 of Title 5, entitled "Judicial Review," provides that actions can be brought for review of arbitrations between the government and private parties pursuant to "sections 9 through 13 of

title 9." 5 U.S.C. § 581(a); *see also* 41 U.S.C. § 7107(a)(3) (providing an arbitration award can be "reviewed pursuant to sections 9 to 13 of title 9" and titled "Judicial review of agency board decisions").[9] And Congress uses the term "judicial review" when referring to private causes of action. *See* 33 U.S.C. § 2236(b)(2) (authorizing an "action for judicial review"); 42 U.S.C. § 10139(c) (same).

Interpreting Congress's intention behind the judicial review bar as restricting substantive review but impliedly *authorizing* nonsubstantive enforcement strains the text. Instead, Congress "says what it means and means what it says." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (citation modified). The more "natural reading" is that Congress intended to bar the IDR process from any judicial remedy other than vacatur actions. *Rep. of Sudan v. Harrison*, 587 U.S. 1, 8 (2019).

A bar on judicial review is interpreted broadly. In *Mullin v. Doe*, the Supreme Court recently interpreted the scope of a "no judicial review" provision under the Temporary Protected Status ("TPS") statute. 146 S. Ct. 2121 (2026). Like the NSA, the TPS barred a "determination" from judicial review. *Compare* 8 U.S.C. § 1254a(b)(5)(A) *with* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). Applicable here, the Court concluded the "no judicial review" bar applied to both substantive *and*

[9] These statutes also show "Congress knows how to incorporate the entire FAA when it writes a statute that contemplates the issuance of binding awards," defeating several of SpecialtyCare's arguments for confirmation all at once. *Kaiser*, 2026 WL 2043194, at *6.

nonsubstantive claims. *Mullin*, 146 S. Ct. at 2134. Like *Mullin*, the "no judicial review" provision of the NSA "is clear, and its plain meaning is very broad." *Id.* at 2133.

The judicial review bar must also be viewed alongside the NSA's administrative remedial scheme. Viewing the statute as a whole, the administrative enforcement layer gives meaning to the judicial review limitation. *See Maracich v. Spears*, 570 U.S. 48, 65 (2013) (noting "an interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction to its meaning"). Congress charged three agencies with establishing the IDR process and empowered those same agencies with enforcing it. These clear delegations—including the power to remedy unpaid IDR determinations—reflect Congress's intent to preclude a duplicative equitable remedy. *See, e.g.*, *Armstrong*, 575 U.S. at 327–28 (holding courts cannot "circumvent Congress's exclusion of private enforcement" or its "intent to foreclose equitable relief").

When reviewing the statutory structure, "[a]llowing providers to bypass the administrative scheme and seek judicial confirmation or enforcement would displace the administrative review, audit, and penalty mechanisms that the NSA expressly gives to the HHS, an outcome that would contradict the scheme Congress enacted." *Interventional Pain Mgmt. v. Horizon Blue Cross Blue Shield of N.J.*, 2025 WL 3470569, at *8 (D.N.J. Dec. 3, 2025). Rather, the availability of these "alternative

mechanisms" to enforce a statute "strongly suggest that Congress did not intend to imply a superfluous private right of action." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020).

SpecialtyCare's reliance on *Maine Community Health Options v. United States* is misplaced. *See* Br. 29 (No. 26-1114) (citing 590 U.S. 296, 324 (2020)). *Maine Community* is distinguishable because that statute lacked features found in the NSA. As the district court explained, "the statute at issue (Risk Corridors program of the Affordable Care Act) did not provide a similar enforcement mechanism for a plaintiff or include the same prohibition of judicial review." A-013 n.4 (No. 26-1768), A-033–034. The *Maine Community* Court also made a point to note the statute contained no "separate remedial scheme." 590 U.S. at 325. The NSA does.[10]

Even assuming "shall be binding" could create a private right in a different statutory scheme, SpecialtyCare still has not identified an implied judicial remedy.

[10] *Cheminova A/S v. Griffin* is also "not on point." A-034. *Cf.* Br. 45 (No. 26-1768) (citing 182 F. Supp. 2d 68, 70–73 (D.D.C. 2002)). *Cheminova* (nonbinding on this court) "involved a different statute," A-011 n.2, and "applied (without analyzing) already existing arbitration law," A-034. Other courts also found *Cheminova* "unavailing" because it "relied on the notion that implying a cause of action was necessary in order to further the goals of the statute involved in that case." *Worldwide Aircraft Servs., Inc. v. United Healthcare*, No. 8:24-CV-2527, 2025 WL 3312169, at *2 (M.D. Fla. Nov. 28, 2025); *accord Med-Trans Corp.*, 700 F. Supp. 3d at 1083 ("The Court is unpersuaded" by *Cheminova* because it "draw[s] from already-existing arbitration law").

*See McGovern*, 554 F.3d at 116 (explaining courts must evaluate "(1) whether Congress intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff" (citing *Sandoval*, 532 U.S. at 286)). SpecialtyCare "must demonstrate both elements are satisfied for a court to conclude that a federal statute creates an implied private right of action." A-012 (No. 26-1768) (citing *McGovern*, 554 F.3d at 116).

*FS Credit* resolves any interpretive tension. Under *FS Credit*, "language establishing an express remedial scheme elsewhere in the statute may foreclose a private cause of action to enforce even those statutes that admittedly create substantive private rights." 146 S. Ct. at 1553 (citation modified). Thus, the remedial scheme in the NSA controls the inquiry.

SpecialtyCare also ignores that the NSA already creates an express right of action—to seek vacatur of IDR determinations. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). As this Court and the Supreme Court have concluded, "where the same statute contains private causes of action in other sections . . . 'it is highly improbable that Congress absentmindedly forgot to mention an intended private action.'" *Santomenno*, 677 F.3d at 186 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979)) (citation modified); *see also FS Credit*, 146 S. Ct. at 1555.

If Congress wished to create a private right of action to enforce an IDR determination, it could have written the statute differently, either by expressly incorporating an enforcement or confirmation mechanism into the NSA, or by not enacting text that explicitly limits judicial review. *See Guardian Flight*, 140 F.4th at 276 (citing statutory example where Congress created a private right of action to enforce an arbitration award under Section 9 of the FAA). Instead, the better reading of the NSA shows "Congress's intent was the opposite: it wanted to deprive federal courts the ability to enforce [IDR determinations]." Appx006. SpecialtyCare cannot show unambiguous intent to the contrary.

#### 2. Dissatisfaction with Congress's Policy Choices Does Not Warrant Augmenting the NSA

SpecialtyCare also relies on a minority view that has questioned whether the remedial scheme Congress enacted is enough to govern IDR enforcement. Br. 31–33 (No. 26-1768) (citing *PHI Health, LLC v. Optimum Choice, Inc.*, 826 F.Supp.3d 654 (D. Md. 2026)).[11] But *PHI Health* and *Agag*, issued before *FS Credit* and *Cisco*, are inconsistent with the Supreme Court's repeated admonition that courts should

[11] In *PHI Health*, the court found Congress's enforcement scheme not "comprehensive," despite the powers Congress delegated to agencies and the states. *Id.* at 667; *see also Agag v. Cigna Health & Life Ins. Co.*, 2026 WL 1021213, at *13 (D. Conn. Apr. 15, 2026), *appeal docketed*, No. 26-1241 (May 6, 2026) (finding the administrative remedies not "so comprehensive that a federal court is barred from confirming an IDR award").

not independently assess the effectiveness of Congress's chosen remedial scheme or weigh Congress's policy choices. *See Sandoval*, 532 U.S. at 287–88 (explaining courts "may not create [a private right of action] no matter how desirable that might be as a policy matter, or how compatible with the statute"); *Lexmark Int'l*, *Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (reiterating that "a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied").[12] Policy considerations—such as whether penalties for statutory violations are sufficiently comprehensive or whether the overall remedial scheme is potent enough to deter noncompliance—are at odds with the Supreme Court's refrain not to "second guess Congress's decision[s]." *Rotkiske*, 589 U.S. at 14. As the district court applied here, "[e]ven if SpecialtyCare would prefer a different mechanism [of enforcement] 'the wisdom of Congress's policy choice is beyond our judicial ken." A-015 (No. 26-1768) (quoting *Guardian Flight*, 140 F.4th at 277).

---

[12] *PHI Health* demonstrates why the Supreme Court has foreclosed judicial reconsideration of policy choices. As the Maryland court found, notwithstanding the powers Congress gave agencies to enforce the NSA, an administrative agency ultimately cannot "order" a party to comply. *See PHI Health*, 826 F. Supp.3d at 667. But under that logic a court can always find reason to supplement a statute with a privately enforceable right when it deems warranted because courts—not agencies—possess the power to judicially order enforcement. That interpretation upends Supreme Court and this Court's private right of action jurisprudence because it removes Congress's role in choosing whether to authorize administrative remedies over judicial relief.

SpecialtyCare's argument that the district courts' interpretation defeats the "bilateral structure of IDR," Br. 25–26, 34 (No. 26-1768), or "creates an irrational statutory asymmetry," Br. 21 (No. 26-1114), is irrelevant. "Congress is afforded wide latitude in creating statutory schema." Appx006. SpecialtyCare also misreads the NSA. It seeks enforcement against Cigna under a timing-of-payment provision applicable only when a provider prevails in IDR. *See* 42 U.S.C. § 300gg-111(c)(6). *Provider*-side IDR compliance is not at issue. Yet SpecialtyCare posits this Court should disavow the inescapable enforcement remedies Congress created because of an interpretive hypothetical not before the Court. And what appears from this alleged asymmetry, SpecialtyCare says, is a submerged provider-side right of action. That strained theory is mistaken.

SpecialtyCare's "mere dissatisfaction with an existing administrative remedy," particularly one not at issue here, "does not justify judicial intervention" or permit courts to "overstep a clear statutory boundary." *Freeman Pain Inst.*, 2025 WL 3268289, at *7; *see also Guardian Flight*, 140 F.4th at 277 ("Understandably, Providers would prefer a different mechanism for resolving provider-insurer disputes."). And its misguided claim that the NSA's administrative enforcement features "do not displace judicial enforcement," Br. 31 (No. 26-1768), improperly

inverts the ordinary right of action inquiry since "Congress, not the Judiciary, decides who may enforce the law," *FS Credit*, 146 S. Ct. at 1551.[13]

### 3. Congress Did Not Incorporate an Unexpressed Judicial Confirmation Mechanism Into the NSA

Despite arguing for confirmation through FAA Section 9 before the district courts, SpecialtyCare charts a different path in its appeal. SpecialtyCare posits that even if Section 9 "is an imperfect fit" for IDR confirmation, courts can still order confirmation anyway. Br. 17, 41, 49 (No. 26-1768). Not so.

SpecialtyCare makes new arguments not raised below.[14] *First*, SpecialtyCare claims the absence of Section 9 does not foreclose finding an embedded general right to confirmation. *Second*, SpecialtyCare also claims that confirmation does not require a Congressionally conferred right of action *at all* because courts can confirm

---

[13] SpecialtyCare references a 2024 amicus brief filed by the Department of Justice ("DOJ"). Br. 33 (No. 26-1768). But SpecialtyCare's reliance on the brief is misplaced. For one, the Fifth Circuit did not adopt DOJ's interpretation. Neither have other courts. *See, e.g.*, *Freeman Pain Inst.*, 2025 WL 3268289, at *7–8 (disregarding the brief); *accord Mod. Orthopaedics*, 2025 WL 3063648, at *11. Despite numerous NSA cases since *Guardian Flight*, SpecialtyCare has not cited another instance where DOJ reasserted that position. Nor did DOJ appear here. And notwithstanding DOJ's position two years ago, federal agencies have touted NSA enforcement efforts. *See*, *supra*, n.7 (announcing $67 million in NSA recoveries), n.8 (announcing $30 million in NSA recoveries).

[14] Absent exceptional circumstances, this Court generally will not consider "arguments asserted for the first time on appeal," which "are deemed to be waived[.]" *Tri-M Grp., L.L.C. v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) (citation omitted).

IDR determinations through summary proceedings. Br. 16–20 (No. 26-1114); Br. 48–50 (No. 26-1768). These theories—one resting on a hidden right to confirmation detached from Section 9 and one abandoning the right of action argument entirely—lack merit.

**(a) *Congress Did Not Authorize a General Right to IDR Confirmation***

Just as Congress did not authorize a private right of action to confirm IDR determinations under FAA Section 9, Congress did not authorize a free-standing private right to confirmation either. Attempting to distance itself from Section 9 and contrary to its pleadings, SpecialtyCare claims Congress "had no reason to cite FAA § 9 to give the awards binding effect," because "Congress did that work itself in the NSA." Br. 49 (No. 26-1768). That argument fails for the same reasons as SpecialtyCare's Section 9 argument.

As explained, Congress knows how to incorporate a confirmation mechanism into a statute. And SpecialtyCare's "rationale ignores the enforcement mechanisms expressly provided by the [NSA]." A-014 (citing 42 U.S.C. § 300gg-22; *Guardian Flight*, 140 F.4th at 277 (summarizing administrative remedies)). An unexpressed confirmation mechanism does not spring to life merely because IDR awards bind the parties.

SpecialtyCare misplaces its reliance on *Guardian Flight v. Aetna*, 789 F. Supp. 3d 214 (D. Conn. 2025). Br. 38–40 (No. 26-1768). Like the district courts

here, that court agreed the FAA could not supply the confirmation mechanism but nonetheless made an atextual policy judgment that without judicial intervention "IDR determinations would be effectively unenforceable." *Id.* at 227–28. But the court also acknowledged that the parties did not brief the NSA's administrative enforcement provisions and therefore "decline[d] to consider" whether the NSA provides an IDR enforcement regime.[15] *Id.* at 228 n.6.

**(b) *SpecialtyCare Conflates an FAA Summary Proceeding with The NSA***

SpecialtyCare's other alternative argument abandons altogether its claim that the NSA provides an implied right of action to confirm IDR determinations. Instead, SpecialtyCare pivots to a new theory: that a right of action is unnecessary for IDR confirmation. Having conceded that FAA Section 9 "is an imperfect fit," SpecialtyCare nonetheless suggests IDRs can be confirmed through a summary proceeding like arbitration confirmations under FAA Section 9, and that courts can do so under the NSA without recognizing a cognizable cause of action. Br. 49 (No. 26-1768); Br. 15–20 (No. 26-1114). But the FAA authorizes both an express right to judicial confirmation and a summary proceeding mechanism. The NSA authorizes

[15] The court later characterized its decision as "a close call" following the Fifth Circuit's decision, noting "[i]t is possible I would have reached a different conclusion[.]" *Order*, *Guardian Flight v. Aetna*, No. 24-CV-0680, ECF No. 295 (D. Conn. Sept. 30, 2025).

neither. SpecialtyCare's argument would turn private right of action precedent upside down.

FAA Section 9, unlike the NSA, creates an express right to seek judicial confirmation of an arbitration award. *See Badgerow v. Walters*, 596 U.S. 1, 4 (2022) (explaining the FAA "authorizes a party to an arbitration agreement to seek several kinds of assistance from a federal court," including confirmation under Section 9).

This distinction is critical. Under Section 9, Congress authorized the right "to apply to the court so specified for an order confirming the award." 9 U.S.C. § 9. No comparable authorization exists in the NSA. SpecialtyCare's focus on the "summary proceedings" that occur under FAA Section 9 therefore skips an analytical step. SpecialtyCare overlooks the threshold inquiry that Congress provided an unmistakable right to confirmation. Br. 16–20 (No. 26-1114). The distinction SpecialtyCare draws between "substantive" review and "ministerial" confirmation is thus misplaced. Br. 16, 19 (No. 26-1114). Courts lack undefined atextual power to grant IDR confirmation absent a congressionally extended private right.

SpecialtyCare also misapplies this Court's decision in *PG Publishing, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 313 (3d Cir. 2021). In *PG Publishing*, this Court recognized that "FAA Section 9 . . . provides for confirmation of arbitration awards." *Id.* at 312; *see also Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 253 & n.3 (3d Cir. 2020) (noting that Section 9 confirmation can be

viewed "as a statutory right created by the FAA"). SpecialtyCare's attention on the explanation that arbitration confirmations are made as motions—*i.e.*, the procedure—misses that Congress installed a right to confirmation under Section 9 in the first instance, which the Court recognized.[16]

SpecialtyCare also misses that "FAA Section 9 expressly provides" the summary proceedings that the NSA lacks. *PG Publishing*, 19 F.4th at 313 (citation modified). As *Teamsters* recognized, summary proceedings are permissible only "where expressly authorized by statute." 966 F.3d at 254. The NSA—unlike the FAA—does not authorize a summary proceeding to confirm IDR determinations. *Id.* at 254.

*PG Publishing* provides SpecialtyCare no support. The Court analyzed two statutes where Congress expressly "provide[d] means for seeking vacatur or confirmation of arbitration awards." 19 F.4th at 311. Those statutes only underscore that Congress knows how to provide a vehicle for judicial confirmation. The absence of FAA Section 9 or an express confirmation mechanism in the NSA, "is convincing

[16] SpecialtyCare claims "IDR award[s] must be confirmed through a summary proceeding," Br. 16 (26-1114), but did not proceed summarily. It proceeded by way of Complaint, mixing its confirmation claim with alleged NSA violations and state law claims. A-045–049. Under the FAA, confirmations "are straightforward proceedings in which no other claims are to be adjudicated." *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987); *see also Teamsters*, 966 F.3d at 252 (citing *Ottley*). Even assuming the NSA authorized a summary IDR confirmation proceeding—which it does not—SpecialtyCare did not proceed that way.

evidence Congress did not wish to create a private remedy to enforce an IDR award." Appx005 (No. 26-1114); *see also Mod. Orthopaedics*, 2025 WL 3063648, at *5 ("Congress knows how to incorporate Section 9, yet it chose not to in the NSA") (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)).

## III. SPECIALTYCARE LACKS STANDING TO SUE UNDER ERISA AND ITS CAUSE OF ACTION FAILS TO STATE A CLAIM

### A. SpecialtyCare Lacks Standing Because the NSA Protects Patients From Financial Liability and Shields Them From IDR Outcomes

The district court found SpecialtyCare lacks standing to sue for improper denial of benefits under ERISA because SpecialtyCare failed to plead that it "suffered a concrete injury" sufficient to bring a Section 502(a)(1)(B) claim. A-015–017. That determination should be affirmed.

"ERISA is a 'comprehensive legislative scheme' designed to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries.'" *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). ERISA "provides employees covered by such plans with the right to sue to 'recover benefits due . . . under the terms of [the] plan.'" *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)).

ERISA does not ordinarily enable a healthcare provider to sue for benefits as a "participant" or "beneficiary." An exception occurs when "a valid assignment of benefits by a plan participant or beneficiary transfers to such a provider both the

insured's right to payment under a plan and his right to sue for that payment." *Id.* at 450. Thus, healthcare providers "may obtain standing to sue" under ERISA "by assignment from a plan participant." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014); *see also N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).[17]

A provider's claim that it has been assigned benefits does not automatically satisfy standing requirements. The provider must plausibly plead that "a *valid* assignment of benefits" occurred. *Am. Orthopedic*, 890 F.3d at 450 (emphasis added). And the "plan participants must have suffered a concrete injury for the provider to have standing as assignee." A-016 (citing *Guardian Flight*, 140 F.4th at 278). In other words, as a "basic principle of assignment law . . . an assignee's rights

[17] To plausibly plead that there has been "a valid assignment of benefits" under ERISA, Third Circuit district courts have determined "a healthcare provider ordinarily must identify a specific patient(s) who has assigned their claim(s) for benefits as well as factual matter that indicates that the provider is proceeding pursuant to an appropriate assignment, such as a copy of the assignment(s) at issue, the relevant language from the assignment(s), or some other evidence of the scope of the assignment(s)." *Minisohn Chiropractic & Acupuncture Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J.*, No. 23-01341, 2023 WL 8253088, at *3 (D.N.J. Nov. 29, 2023). In considering whether healthcare providers have derivative standing to bring ERISA claims, "a conclusory statement merely alleging that a provider was assigned plan benefits from its patients does not plausibly demonstrate standing." *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. 16-01649, 2017 WL 751851, at *5 (D.N.J. Feb. 27, 2017). Here, SpecialtyCare lacks standing to pursue claims under ERISA because SpecialtyCare's "conclusory allegation" about having been assigned patients' claims for benefits "is devoid of any factual support." *Minisohn*, 2023 WL 8253088, at *2.

derive from the assignor." *CardioNet*, 751 F.3d at 178; *see also Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor."). SpecialtyCare failed both requirements.

As the district court correctly concluded, the financial liability protections afforded plan participants under the NSA means those participants have suffered no concrete injury as alleged here. A-016 ("By design, the No Surprises Act shields plan participants from the out-of-network costs that are the subject of this lawsuit; in other words, the outcome of this dispute will not affect the plan participants in any way." (citing *Mod. Orthopaedics*, 2025 WL 3063648, at *4, 8–9)).

SpecialtyCare's arguments lack merit. SpecialtyCare acknowledges that "Congress protected patients from balance bills so they would not be caught in payment disputes." Br. 52 (No. 26-1768). SpecialtyCare cannot escape that under the NSA, plan participants incur no financial injury from nonpayment of an IDR award because "the passage of the NSA means that patients . . . are no longer financially responsible for balance billing—*i.e.*, the difference between the out-of-network provider's price and what the insurer agrees to cover." *Guardian Flight LLC v. Health Care Serv. Corp.*, 735 F. Supp. 3d 742, 752 (N.D. Tex. 2024), *aff'd Guardian Flight*, 140 F.4th at 278 (citing 42 U.S.C. § 300gg-135). At bottom, SpecialtyCare must show that, "had those beneficiaries brought the[se] claims

themselves," they suffered a concrete injury. *Guardian Flight*, 140 F.4th at 278. If the patient-assignor suffered no injury, then neither did SpecialtyCare. *See CardioNet*, 751 F.3d at 178.

The hallmark of the NSA is its patient protection features, which holds patients harmless from surprise monetary liability incurred following emergent or inadvertent out-of-network care. *See, e.g.*, 42 U.S.C. §§ 300gg-111(a)(1)(C)(ii)–(iv), (b)(1)(A)–(D), 300gg-131, 300gg-132. Patients are shielded from the dispute resolution process between payers and providers, and by law cannot incur financial liability from an IDR determination. The plan participants "have no real interest in the outcome of this case," and since they lack a "concrete stake in this lawsuit," SpecialtyCare "similarly lacks the Article III standing necessary to bring an ERISA claim." A-016 (citing *Guardian Flight*, 140 F.4th at 278 ("[B]ecause the beneficiaries would lack Article III standing if they brought an ERISA claim on their own, Providers lack standing to bring a derivative ERISA claim as their assignees.")).

Viewing these facts through *Thole v. U.S. Bank* is instructive. 590 U.S. 538, 541 (2020). Applying *Thole* here, "[i]f [the plan participants] were to *lose* this lawsuit, they would still receive the exact same [] benefits that they are already slated to receive, not a penny less," and "[i]f [the plan participants] were to *win* this lawsuit, they would still receive the exact same [] benefits that they are already slated to

receive, not a penny more." *Id.* at 541. Thus, "[b]ecause the [plan participants] themselves have no concrete stake in the lawsuit, they lack Article III standing." *Id.* at 542.

### B. SpecialtyCare Fails to Articulate a Cognizable ERISA Claim

To state an ERISA claim "to recover benefits due to [them] under the terms of [the Plans]," 29 U.S.C. § 1132(a)(1)(B), a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006). "The plan, in short, is at the center of ERISA." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013). "Only the words of the plan itself can create an entitlement to benefits." *Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996). A plethora of district court cases have distilled the *Hooven* principle to require a litigant attempting to state an ERISA benefits claim to identify the plan provision that was allegedly breached and why that provision entitles it to additional payment. *See Adv. Gyn. & Laparoscopy of N. Jersey, P.C. v. Cigna Health & Life Ins. Co.*, 2024 WL 3159414, at *8 (D.N.J. June 25, 2024) (citing cases), *rev'd in part* No. 24-2212, 2026 WL 2030368 (3d Cir. July 13, 2026).

Thus, "[t]o assert a claim under this provision, a plan participant must demonstrate that he or she has a right to benefits that is legally enforceable against the plan, and that the plan administrator improperly denied those benefits." *Fleisher*

*v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (citation modified). The Complaint makes vague references to "plan terms" without identifying which plan terms Cigna has allegedly violated. A-047, ¶ 50. Even in the broadest strokes, nothing in the Complaint outlines why SpecialtyCare is entitled to additional sums of money under ERISA, other than it wants to collect on alleged amounts awarded under the NSA. *See, e.g.*, A-39–40, ¶¶ 2, 6. IDR awards are not benefits owed to any ERISA participant, much less benefits that participants can legally enforce against their insurance plan. As already explained, they are statutory payment obligations owed by an insurer to a provider, or vice versa. Congress purposely designed the NSA to protect patients.

SpecialtyCare's argument that the NSA somehow amends ERISA plans to create a new type of claim under ERISA § 502(a)(1)(B) is unavailing. Br. at 55–58 (No. 26-1768). Any claimed right to payment stems from the NSA, not the plan participants' rights under ERISA. The reason Congress incorporated the NSA through an amendment to ERISA (and the Internal Revenue Code, and the PHSA) was to ensure members of all group health plans, whether issued by private employers, by non-federal government plans, or to federal employees, were all equally protected from surprise billing, not to create an ERISA cause of action. *Med-Trans Corp.*, 700 F. Supp. 3d at 1079. SpecialtyCare cannot add an implied right of action for IDR payments to "an enforcement scheme crafted with such evident care

as the one in ERISA." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (holding that ERISA does not "authorize the recovery of extracontractual damages").

## IV. THE DISTRICT COURTS PROPERLY DISMISSED SPECIALTYCARE'S STATE-LAW CLAIMS

SpecialtyCare's state-law claims are all derivative of its claim that Appellees failed to pay IDR determinations. In the consolidated appeal, the District of Delaware dismissed SpecialtyCare's state-law claims because SpecialtyCare cannot use state or common-law claims to end run around a statute that lacks a private right of action. Appx019–026 (No. 26-1114). The Supreme Court has explained that the absence of a private right of action to enforce a statute "would be rendered meaningless" if a plaintiff could simply pursue enforcement in another form. *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 118 (2011).[18] This Court has similarly held that a plaintiff cannot "use state common law to circumvent the absence of a private right of action" under a federal statute. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 66 (3d Cir. 2008). And, as Cigna argued below, the state-law claims are expressly preempted by ERISA and SpecialtyCare failed to properly plead the elements of a cause of action anyway.

---

[18] This issue was addressed by the district court in the consolidated appeal No. 26-1864 and Cigna now addresses it here.

In *Astra*, the Court held that plaintiffs cannot use alternative legal theories to enforce statutory obligations where Congress declined to create a private right of action, explaining such claims are impermissible where they are "in substance" efforts to enforce the statute itself. *Id.* at 113–14. Permitting such claims would invite "a multitude of dispersed and uncoordinated lawsuits" that could "undermine the agency's efforts to administer . . . on a uniform, nationwide basis." *Id.* at 120. When "no private right of action exists under the relevant statute, the plaintiffs' efforts to bring their claims as state common law claims are clearly an impermissible 'end run' around the [statute]." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003).

The District of Delaware properly applied *Astra* and *Umland*. SpecialtyCare "may not circumvent Congress's omission of a private right of action in the NSA by seeking to enforce a federal right under a state law theory." Appx024–025 (citing *Astra*, 563 U.S. at 113–14). With all SpecialtyCare's state-law claims, "the ultimate goal . . . is to enforce the federal statute." Appx022 (quoting *Bauer v. Elrich*, 8 F.4th 291, 300 n.6 (4th Cir. 2021)). If allowed, "state common law would govern whether and how a federal statute may be enforced, irrespective of Congressional intent." Appx022 (quoting *Bauer*, 8 F.4th at 299). Under that principle, the state-law claims are barred because they are "'one and the same' as their claims . . . to enforce the IDR awards." Appx021–022 (quoting *Astra*, 563 U.S. at 114, 118); *see also Umland*,

542 F.3d at 67 (dismissing state-law claim that "at root" alleges violation of federal statute).

The gravamen of SpecialtyCare's state-law claims in each of the four actions is that Cigna failed to pay the IDR determinations in violation of the NSA. SpecialtyCare does not allege a violation of any substantive obligation that arises independent of the NSA. *Astra*, 563 U.S. at 113. As the District of Delaware correctly found, where "the essence" or "gravamen" of a claim is an alleged violation of a federal statute that lacks a private right of action, plaintiffs cannot pursue that same claim in another form. Appx021, 023 (citations omitted). Yet that is exactly what Plaintiff attempts here: "wield state law claims to obtain payment of the IDR awards themselves." Appx025, n.6. Because all SpecialtyCare's state-law claims are "one and the same" as a direct effort to enforce the NSA, they are "an impermissible use of state law to enforce a federal statute that lacks a private right of action." Appx025, n.6.

SpecialtyCare's state-law claims cannot survive for the additional reason that the district court properly declined supplemental jurisdiction after dismissing its federal claims. A-017–18. As SpecialtyCare acknowledges, Br. 59 (No. 26-1768), courts have authority to decline jurisdiction in such circumstances. *See* 28 U.S.C. § 1367(c)(3). Since the district court properly dismissed SpecialtyCare's federal claims, it was well within its discretion to decline supplemental jurisdiction.

## CONCLUSION

For these reasons, the district court judgments should be affirmed.

Dated: August 28, 2026

*s/ Caroline E. Oks*
Caroline E. Oks
Ryan P. Goodwin
Jennifer M. Rutter
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
coks@fbtgibbons.com
rgoodwin@fbtgibbons.com
jrutter@fbtgibbons.com

*Attorneys for Appellee*
*Cigna Healthcare, Inc.*

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this brief, including the undersigned, is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated: August 28, 2026 By: *s/ Caroline E. Oks*
Caroline E. Oks

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,935 words excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared using a proportionally spaced typeface, Times New Roman, with 14-point font, using Microsoft Word.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies.

Dated: August 28, 2026 By: *s/ Caroline E. Oks*
Caroline E. Oks

## CERTIFICATION THAT E-BRIEF HAS BEEN VIRUS CHECKED

Pursuant to Third Circuit Local Appellate Rule 31.1(c), I certify the following:

The file containing the electronic version of this brief has been run through a virus detection program, namely a continuously updated version of CrowdStrike, version 7.39.21108.0, and no viruses have been detected.

Dated: August 28, 2026 By: *s/ Caroline E. Oks*
Caroline E. Oks

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(d), on August 28, 2026, I caused the foregoing brief to be electronically filed with the Clerk of the United States Court of Appeals for the Third Circuit through the Court's CM/ECF system, and thereby served upon all counsel appearing in this case.

Dated: August 28, 2026 By: *s/ Caroline E. Oks*
Caroline E. Oks